## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SNAP-ON INCORPORATED | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| MARK LAURIE | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR INJUNCTION, DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Snap-on Incorporated ("Snap-on"), for its Complaint against Defendant, Mark Laurie ("Laurie"), states as follows:

## NATURE OF ACTION

This action is for conversion and an injunction against Laurie to assign certain patents, rightfully owned by Snap-on, to Snap-on under 35 U.S.C. §256, and for other relief under the Doctrine of Patent Misuse and Section 2 of the Sherman Act, 15 U.S.C. § 2, stemming from Laurie's fraud before the U.S. Patent and Trademark Office.

In addition, Snap-on seeks a declaratory judgment from this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that: (1) Snap-on has not, and does not, infringe any claim of the Challenged Patents (as defined below); (2) each claim of the Challenged Patents is invalid under the U.S. Patent Act, *inter alia*, 35 U.S.C. §§ 102, 103, 112, and/or 132; and (3) each of the Challenged Patents is unenforceable due to Laurie's inequitable conduct before the U.S. Patent and Trademark Office.

## THE PARTIES

1. Plaintiff Snap-on is a corporation organized and existing under the laws of the State of Delaware, and has a principal place of business at 2801 80th Street, Kenosha, Wisconsin.

2. Defendant Laurie is a citizen of the State of Florida, and has a principal residence of 13956 Coco Plum Road, Palm Beach Gardens, Florida.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to: (a) 28 U.S.C. § 2201, in that this action seeks a declaratory judgment with respect to allegations of patent infringement and patent validity, under the United States Patent Act, 35 U.S.C. § 101 *et. seq.*, and patent enforceability, under the equitable doctrine of inequitable conduct; (b) 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under an Act of Congress relating to patents; (c) 28 U.S.C. §§ 1331 and 1337(a), in that this matter arises under Section 2 of the Sherman Act, 15 U.S.C. § 2; (d) 28 U.S.C. § 1332(a), because of diversity of citizenship of the parties and the amount in controversy, exclusive of interest and costs, is in excess of $75,000; and (e) supplemental jurisdiction over Snap-on's common law claim under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Laurie in that Laurie (a) has committed the acts complained of herein in this district and/or (b) transacts business within this district.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the facts giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND

6. Snap-on is a leading designer, manufacturer and seller of hand tools, including low-profile ratchet gear tools and sockets adapted to be used with those gear tools, such as Snap-

on product no. 111RT ("Snap-on's Low-Profile Ratchet") (attached as Exh. F is a brochure depicting Snap-on's Low-Profile Ratchet).

7. Laurie contends that he owns all rights, title, and interest, in and to U.S. Patent Nos.: (a) 8,205,529 (the "'529 Utility Patent") (attached as Exh. A); (b) D628,868 (the "'868 Design Patent") (attached as Exh. B); (c) D636,240 (the "'240 Design Patent") (attached as Exh. C); (d) D636,650 (the "'650 Design Patent") (attached as Exh. D); and (e) D660,111 (the "'111 Design Patent") (attached as Exh. E) (collectively "the Challenged Patents")

8. Laurie was a franchisee of Snap-on, until December 20, 2010, and he is now an employee of Snap-on.

9. On or about December 11, 2007, Laurie filed a provisional patent application, serial no. 61/012,793, with the U.S. Patent and Trademark Office. (the "'793 Provisional Application") (attached as Exh. G is Fig. 1 of the '793 Provisional Application).

10. Referring to Exhibit G, the '793 Provisional Application disclosed, as Laurie's alleged invention, a low-profile ratchet tool (100) having a four-sided recess (122) adapted to receive a specialized socket (200) having a detent ball (208). According to the '793 Provisional Application, when the socket (200) is inserted into the recess (122), the detent ball (208) holds the socket (200) in the recess (122).

11. Sometime prior to October 2008, Snap-on employees, or those having obligations to assign inventions to Snap-on, other than Laurie, invented and designed Snap-on's Low-Profile Ratchet (the "First Snap-on Low-Profile Ratchet"), without any inventive contribution from Laurie. The First Snap-on Low-Profile Ratchet includes a multi-tooth drive gear recess adapted to receive a hexagonally shaped socket having a snap-ring. When the socket is inserted into the

drive gear recess, the snap-ring creates a frictional-fit interface to retain the socket in the drive gear.

12. Thereafter, but, more particularly, in or about October 2008, Laurie had access to, and did access, technical and design information regarding, including drawings of, sockets invented and designed by employees of Snap-on and adapted to be used with the First Snap-on Low-Profile Ratchets.

13. On or about December 10, 2008, Laurie filed a non-provisional utility patent application, serial no. 12/332,328, with the U.S. Patent and Trademark Office, claiming priority to the '793 Provisional Application, and allowed the '793 Provisional Application to go abandoned. (the "'328 Utility Application") (attached as Exh. H is U.S. Patent Application Publication No. 2009/0145268, the publication of the '328 Utility Application).

14. As shown in Figs. 40 and 41 and described on page 7 of the '328 Utility Application (see Exh. H), Laurie added in the '328 Utility Application a socket (610) to be used with the low-profile ratchet tool having a "ratchet locking mechanism 618 [which] can be an O-Ring, a metal snap ring and the like… These retention mechanisms [618] provide a frictional fit between the plug drive section 616 and the hexagonally-shaped socket attachment receptacle 604, maintaining the tool with in [sic] the wrench during use."

15. The sockets shown and described by Laurie in the '328 Utility Application are substantially identical to the Snap-on sockets that Laurie had access to in at least October 2008.

16. On or about February 12, 2009, Snap-on and Laurie entered into a License Agreement, granting Snap-on an exclusive license for the invention(s) disclosed in the '328 Utility Application (the "License Agreement", attached as Exh. I).

4
14839146v.10
Case 2:12-cv-01173-PJG   Filed 11/16/12   Page 4 of 18   Document 1

17. In or about July 2009, Snap-on publicly disclosed and sold or offered for sale the First Snap-on Low-Profile Ratchet (see Exh. F).

18. In or about July 2009, or shortly thereafter, Laurie had access to, and did access, the First Snap-on Low-Profile Ratchet, through, *inter alia*, purchasing and obtaining the First Snap-on Low Profile Ratchet from Snap-on, and technical and design information relating to the First Snap-on Low-Profile Ratchet. Thereafter, Laurie sold or offered to sell the First Snap-on Low-Profile Ratchet in the United States.

19. On June 29, 2010, Laurie filed design patent application serial no. 29/364,821 with the U.S. Patent and Trademark Office covering a specific socket design to be used with low-profile ratchet tools. (the "'821 Design Application"). On December 14, 2010, the U.S. Patent and Trademark Office issued to Laurie the '868 Design Patent based on the '821 Design Application (see Exh. B).

20. Also, on or about June 29, 2010, and realizing that the First Snap-on Low-Profile Ratchet was not covered or disclosed in any patent applications filed by Laurie with the U.S. Patent and Trademark Office, Laurie filed a design patent application with the U.S. Patent and Trademark Office, that became serial no. 29/378,797, covering a specific type of socket used with the First Snap-on Low-Profile Ratchet. (the "'797 Design Application"). On April 19, 2011, the U.S. Patent and Trademark Office issued to Laurie the '240 Design Patent based on the '797 Design Application (see Exh. C).

21. Also, on or about June 29, 2010, and realizing that the First Snap-on Low-Profile Ratchet was not covered or disclosed in any patent applications filed by Laurie with the U.S. Patent and Trademark Office, Laurie filed a design patent application with the U.S. Patent and Trademark Office, that became serial no. 29/378,798, covering another specific type of socket

5

used with the First Snap-on Low-Profile Ratchet. (the "'798 Design Application"). On April 26, 2011, the U.S. Patent and Trademark Office issued to Laurie the '650 Design Patent based on the '798 Design Application (see Exh. C).

22. Sometime in early 2010, Snap-on employees, or those having obligations to assign inventions to Snap-on, other than Laurie, invented and designed a Magnetic Bit Holder, part no. RTMBS8, without any inventive contribution from Laurie. (the "Snap-on RTMBS8 Bit Holder") (attached as Exh. J is a Snap-on marketing brochure depicting the Snap-on RTMBS8 Bit Holder). The Snap-on RTMBS8 Bit Holder is adapted to be used with Snap-on's First Low-Profile Ratchet and includes a magnet in the base to magnetically retain bits.

23. On or about June 14, 2010, Snap-on publicly disclosed and/or sold or offered for sale the Snap-on RTMBS8 Bit Holder.

24. Sometime in early 2010, Snap-on employees, or those having obligations to assign inventions to Snap-on, other than Laurie, invented and designed an updated Snap-on Low-Profile Ratchet (the "Second Snap-on Low-Profile Ratchet"). Like the First Snap-on Low-Profile Ratchet, the Second Snap-on Low-Profile Ratchet also included a multi-tool drive gear recess adapted to receive a hexagonally shaped socket having a snap-ring. However, the multi-tooth drive gear recess of the updated Second Snap-on Low-Profile Ratchet includes chamfers on both sides, unlike the First Snap-on Low-Profile Ratchet, so that when a socket with a snap-ring is inserted into the gear recess, the first chamfer better compresses the snap-ring for easier socket insertion, and when the socket is fully inserted in the gear recess, the second chamfer allows the snap-ring to fully expand, causing the socket to be positively retained in the gear drive.

25. In or about August 2010, Snap-on publicly disclosed and/or sold or offered for sale the Second Snap-on Low-Profile Ratchet.

26. Prior to October 2010, Laurie had access to, and did access, the First and Second Snap-on Low Profile Ratchets and the Snap-on RTMBS8 Bit Holder, through, *inter alia*, purchasing and obtaining the First and Second Snap-on Low Profile Ratchets and the Snap-on RTMBS8 Bit Holder from Snap-on, and technical and design information relating to the First and Second Snap-on Low-Profile Ratchets and Snap-on RTMBS8 Bit Holder. Thereafter, Laurie sold or offered to sell the First and Second Snap-on Low-Profile Ratchets and Snap-on RTMBS8 Bit Holder in the United States.

27. Realizing that the inventive features of the First Snap-on Low-Profile Ratchet, Second Low-Profile Ratchet, and Snap-on RTMBS8 Bit Holder were not covered or disclosed in any of Laurie's patent applications, Laurie, on or about October 4, 2010, filed another non-provisional patent application with the U.S. Patent and Trademark Office, that became serial no. 12/897,775. (the "775 Utility Application"). On June 26, 2012, the U.S. Patent and Trademark Office issued to Laurie the '529 Utility Patent, based on the '775 Utility Application.

28. The '775 Application, for the first time, includes drawings of a low-profile ratchet gear tool and sockets that are substantially identical to the First Snap-on Low-Profile Ratchet, Second Snap-on Low-Profile Ratchet and Snap-on RTMBS8 Bit Holder.

29. For the first time, Laurie disclosed and included drawings in the '775 Utility Application relating to: (a) a multi-tool drive gear recess for a low-profile ratchet; (b) chamfers on both sides of the drive gear recess; (c) when a socket with a snap-ring is inserted into the gear recess, the first chamfer more easily compresses the snap-ring for easier socket insertion, and when the socket is fully inserted, the second chamfer allows the snap-ring to fully expand, thus causing the socket to be positively retained in the gear drive. These features described and

shown in the '775 Utility Application are identical to, at least, the inventive features used in the Second Snap-on Low-Profile Ratchet.

30. Also, for the first time, Laurie disclosed in the '775 Utility Application, and contrary to what Laurie disclosed in the previous '328 Utility Application, "[a] metal ring cannot be used for a frictional fit, as metal against metal has a low coefficient of friction. Hence, the utilisation [sic] of a metal snap ring as the ratchet locking mechanism 618 in combination with a chamfered 729 receptacle 722 ensures the dual socket interface socket 610 remains engaged with the snap ring engaging drive gear 720." ('529 Patent, col. 18, lns. 17-22, Exh. A). These features are identical to, at least, the inventive features used in the Second Snap-on Low-Profile Ratchet.

31. Also, for the first time, Laurie disclosed and included drawings in the '775 Utility Application relating to a magnetic bit holder to be used with low-profile ratchet gear tools. The magnetic bit holder described and shown in the '775 Utility Application is identical to the Snap-on RTMBS8 Bit Holder.

32. By filing patent applications with the U.S. Patent and Trademark Office, and obtaining patents relating to, the First and Second Snap-on Ratchet Gear and Snap-on RTMBS8 Bit Holder, without Snap-on's permission or authorization, Laurie misappropriated and passed as his own the Snap-on inventions embodied in the First Snap-on Low-Profile Ratchet, the Second Snap-on Low-Profile Ratchet and Snap-on RTMBS8 Bit Holder products.

33. Laurie learned of the inventions claimed in each of the Challenged Patents by, *inter alia*, (a) being a Snap-on franchisee; (b) using, selling or offering to sell the First Snap-on Low-Profile Ratchet, Second Snap-on Low-Profile Ratchet, and Snap-on RTMBS8 Bit Holder; (c) attending Snap-on conferences that discussed or showed the First Snap-on Low-Profile Ratchet, Second Snap-on Low-Profile Ratchet, and Snap-on RTMBS8 Bit Holder; or (d)

otherwise having access to the First Snap-on Low-Profile Ratchet, Second Snap-on Low-Profile Ratchet, and Snap-on RTMBS8 Bit Holder or technical and product information relating to the First Snap-on Low-Profile Ratchet, Second Snap-on Low-Profile Ratchet, and Snap-on RTMBS8 Bit Holder.

34. Snap-on, through its employees or those working on behalf of Snap-on, other than Laurie, invented the inventions claimed in each of the Challenged Patents.

35. Laurie did not invent, nor did Laurie provide any inventive contribution for, any of the inventions claimed in each of the Challenged Patents.

36. Laurie, through his attorney, sent to Snap-on, through their attorneys, repeated demands for monetary compensation relating to Snap-on using, making, selling, offering for sale, or importing into the United States, the First and Second Snap-on Low-Profile Ratchets and Snap-on RTMBS8 Bit Holder by contending, *inter alia*, that the First and Second Snap-on Low-Profile Ratchets or Snap-on RTMBS8 Bit Holder are covered by one or more claims of the Challenged Patents. (For example, see Laurie letter sent to Snap-on on or about August 27, 2012 attached as Exh. K).

37. Laurie executed and filed with the U.S. Patent and Trademark Office a Declaration for each of the Challenged Patents, knowingly misrepresenting to the U.S. Patent and Trademark Office that he was the true and correct inventor of the inventions claimed in the Challenged Patents. In particular, Laurie filed the following Declarations with the U.S. Patent and Trademark Office for each the Challenged Patents on the referenced dates (true and correct copies of the Declarations are attached as Exh. L-P):

(a) '529 Patent, filed with U.S. Patent and Trademark Office on October 4, 2010, and executed by Laurie on October 1, 2010;

9

14839146v.10
Case 2:12-cv-01173-PJG   Filed 11/16/12   Page 9 of 18   Document 1

(b)     '868 Patent, filed with U.S. Patent and Trademark Office on June 29, 2010, and executed by Laurie on June 28, 2010;

(c)     '240 Patent, filed with U.S. Patent and Trademark Office on November 9, 2010, and executed by Laurie on November 8, 2010;

(d)     '650 Patent, filed with U.S. Patent and Trademark Office on November 9, 2010, and executed by Laurie on November 6, 2010; and

(e)     '111 Patent, filed with U.S. Patent and Trademark Office on April 8, 2011, and executed by Laurie on April 7, 2011.

38. Each of the Declarations contains the following statement: "I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention…" (the "Ownership Statement").

39. Each of the Declarations contains the following statement: "I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon."

40. The Declarations, and the Ownership Statements therein, are necessarily material to the patentability of each claim of each of the Patents. Had the U.S. Patent and Trademark Office known that Laurie did not invent the inventions claimed in the Challenged Patents, the U.S. Patent and Trademark Office would not have issued the Challenged Patents to Laurie, as the

10

claims in the Challenged Patents would not be patentable, pursuant to *inter alia*, 35 U.S.C. §§ 102, 115, and 261.

41. When he filed, or caused to be filed, the Declarations containing the Ownership Statements with the U.S. Patent and Trademark Office, Laurie knew the Ownership Statements in those Declarations were false.

42. Laurie filed, or caused to be filed, the Declarations containing the false Ownership Statement with the U.S. Patent and Trademark Office, with the intent to deceive the U.S. Patent and Trademark Office and have the U.S. Patent and Trademark Office issue the Challenged Patents to Laurie.

43. Moreover, Laurie is aware of prior art that would render the claims of the Challenged Patents invalid, such as, *inter alia*, the fact that Snap-on sold, offered for sale or otherwise publicly disclosed the First Snap-on Low-Profile Ratchet, Second Snap-on Low Profile Ratchet, and Snap-on RTMBS8 Bit Holder before Laurie's alleged inventions claimed in the Challenged Patents.

## COUNT I
## CONVERSION OF PROPERTY

44. Snap-on repeats and realleges paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Laurie wrongfully converted Snap-on's property rights in and to the inventions embodied in the First and Second Snap-on Low-Profile Ratchets, and Snap-on RTMBS8 Bit Holder, and any patent rights relating to those inventions, by signing and filing knowingly false Declarations with the U.S. Patent and Trademark Office, declaring to be the inventor of the Challenged Patents, causing the U.S. Patent and Trademark Office to grant ownership of the Challenged Patents to Laurie.

11

46. Laurie's actions have caused, and continue to cause, damages to Snap-on, in an amount to be determined at trial.

47. Laurie's allegations and assertion of property rights contrary to Snap-on's rights, and his attempt to enforce the Challenged Patents against Snap-on, have caused, and continue to cause, irreparable injury to Snap-on, and, unless and until Laurie's actions are enjoined by this Court, Snap-on will continue to suffer irreparable injury because of Laurie's meritless allegations. Snap-on has no adequate remedy at law.

## COUNT II
## DECLARATION OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT

48. Snap-on repeats and realleges paragraphs 1 through 43 of this Complaint as if fully set forth herein.

49. Pursuant to 37 C.F.R. 1.56, Laurie owed a duty of candor and good faith in dealing with the U.S. Patent and Trademark Office with regard to the Challenged Patents.

50. The Challenged Patents are unenforceable, because of a course of conduct that began prior to and during the prosecution of each of the Challenged Patents by, at least, Laurie, and possibly others who owed a duty of candor and good faith to the U.S. Patent and Trademark Office, which amounts to inequitable conduct.

51. Each of the Declarations with the Ownership Statements is material to the patentability of the Challenged Patents, as it bears directly on inventorship of the inventions claimed in respective Challenged Patents and are directly pertinent to the requirements for patentability enumerated in, *inter alia*, 35 U.S.C. §§ 102, 115, and 261.

52. Laurie filed, or caused to be filed, with the U.S. Patent and Trademark Office Declarations containing knowingly false Ownership Statements with the intent to deceive the U.S. Patent and Trademark Office.

12

53. But for the Ownership Statements made by Laurie in the Declarations, the U.S. Patent and Trademark Office would not have issued the Challenged Patents to Laurie.

54. The single most reasonable inference to be drawn from the Declarations and Ownership Statements is that Laurie intended to deceive the U.S. Patent and Trademark Office by knowingly making false statements in the Declarations in order to convince the U.S. Patent and Trademark Office to issue the Challenged Patents to Laurie.

55. Laurie possesses additional information relevant to his intent.

## COUNT III
## INJUNCTION PROHIBITING LAURIE'S ENFORCEMENT OF THE PATENTS UNDER THE DOCTRINE OF PATENT MISUSE

56. Snap-on repeats and realleges paragraphs 1 through 43 and 48 through 55 of this Complaint as if fully set forth herein.

57. Laurie knowingly and fraudulently obtained each of the Challenged Patents from the U.S. Patent and Trademark Office by signing the Declarations including the knowingly false Ownership Statement.

58. Laurie knowingly misrepresented material facts to the U.S. Patent and Trademark Office that Laurie is not the inventor of the inventions claimed in each of the Challenged Patents, and did not make any inventive contribution to any of the claims of the Challenged Patents.

59. Laurie knows that he is not the inventor of the inventions claimed in the Challenged Patents, and did not provide any inventive contribution to the inventions claimed in the Challenged Patents.

60. Laurie knows, or should have known, that his knowing and fraudulent representations to the U.S. Patent and Trademark Office that he is the inventor of the inventions claimed in the Challenged Patents renders each of such claims invalid and/or the unenforceable.

13
14839146v.10
Case 2:12-cv-01173-PJG   Filed 11/16/12   Page 13 of 18   Document 1

61. Laurie knows, or should have known, that the prior art that Laurie was aware of, but which he failed to disclose to the U.S. Patent and Trademark Office, renders each of the claims of the Challenged Patents invalid and/or unenforceable.

62. Laurie procured the Challenged Patents through acts of fraud upon, and misrepresentations to, the U.S. Patent and Trademark Office. For example, Laurie provided no inventive contribution for the inventions claimed in the Challenged Patents, yet submitted Declarations to the U.S. Patent and Trademark Office with the Ownership Statements declaring him to be the correct and sole inventor of the inventions claimed in the Challenged Patents.

63. Laurie has attempted, and continues to attempt, to enforce the Challenged Patents against Snap-on, by, *inter alia*, seeking monetary compensation from Snap-on for Snap-on's sale or offer for sale of the First and Second Low-Profile Ratchets and Snap-on RTMBS8 Bit Holder.

64. By attempting to enforce knowingly invalid and unenforceable patents against Snap-on, Laurie is attempting to impermissibly use the U.S. Patent Act to enforce each of the Challenged Patents with an anticompetitive effect.

65. Laurie's actions amount to patent misuse under the Doctrine of Patent Misuse.

66. Laurie's actions have caused, and continue to cause, damages to Snap-on, in an amount to be determined at trial.

67. Laurie's allegations and assertion of property rights contrary to Snap-on's rights, and his attempt to enforce the Challenged Patents against Snap-on, have caused, and continue to cause, irreparable injury to Snap-on, and, unless and until Laurie's actions are enjoined by this Court, Snap-on will continue to suffer irreparable injury because of Laurie's meritless allegations. Snap-on has no adequate remedy at law.

## COUNT IV
## SECTION 2 OF THE SHERMAN ACT

68. Snap-on repeats and realleges paragraphs 1 through 43 and 48 through 67 of this Complaint as if fully set forth herein.

69. By the acts alleged and complained of herein, Laurie has improperly misused the U.S. Patent Act with anticompetitive effects, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

70. Laurie's actions have caused, and continue to cause, damages to Snap-on, in an amount to be determined at trial.

71. Laurie's allegations and assertion of property rights contrary to Snap-on's rights, and his attempt to enforce the Challenged Patents against Snap-on, have caused, and continue to cause, irreparable injury to Snap-on, and, unless and until Laurie's actions are enjoined by this Court, Snap-on will continue to suffer irreparable injury because of Laurie's meritless allegations. Snap-on has no adequate remedy at law.

## COUNT V
## DECLARATION OF NON-INFRINGEMENT

72. Snap-on repeats and realleges paragraphs 1 through 43 of this Complaint as if fully set forth herein.

73. The First and Second Snap-on Low-Profile Ratchets and Snap-on RTMBS8 Bit Holder are not covered by any claim of the Challenged Patents.

74. Snap-on does not infringe, contributorily infringe, or induce others to infringe, either literally or under the Doctrine of Equivalents, any claim of the Challenged Patents.

## COUNT VI
## DECLARATION OF INVALIDITY

75. Snap-on repeats and realleges paragraphs 1 through 43 of this Complaint, as if fully set forth herein.

76. Each claim of each of the Challenged Patents is invalid because it does not comply with the statutory requirements of patentability enumerated in, inter alia, 35 U.S.C. §§ 102, 103, 112 and/or 132.

## **PRAYER FOR RELIEF**

WHEREFORE, Snap-on, Inc., respectfully requests that this Court enter a judgment:

a. finding Laurie's conduct, and his acts complained of herein, is a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

b. finding Laurie's conduct, and his acts complained of herein, constitutes patent misuse under the Doctrine of Patent Misuse;

c. declaring that Laurie is not the inventor of the inventions claimed in the Challenged Patents;

d. preliminarily and permanently enjoining Laurie from enforcing the Challenged Patents against Snap-on;

e. ordering Laurie to assign all rights, title and interest in and to the Challenged Patents, and the inventions claimed in the Challenged Patents, to Snap-on;

f. declaring that each of the Challenged Patents is unenforceable due to inequitable conduct;

g. declaring that Snap-on has not, and does not, directly infringe, contributorily infringe, or induce others to infringe, either literally or under the Doctrine of Equivalents, any claim of the Challenged Patents;

h. declaring that each of the claims of the Challenged Patents is invalid for failing to comply with the U.S. Patent Act, *inter alia*, 35 U.S.C. 101, 102, 103, 112, and 132;

i. ordering Laurie to pay to Snap-on the damages that it has incurred as a result of the acts complained of herein;

j. ordering Laurie to pay Snap-on its interest, costs and expenses of this action;

k. finding this case exceptional and ordering Laurie to pay to Snap-on its reasonable attorneys' fees, pursuant to 35 U.S.C. § 256; and

l. awarding Snap-on any other relief that this Court deems just and fit.

17

DATED: November 16, 2012            Respectfully submitted,

<u>Attorneys for Plaintiff:</u>            SNAP-ON INCORPORATED

Josh Jubelirer
SEYFARTH SHAW LLP
131 S. Dearborn St., Suite 2400        By:        /s/Josh Jubelirer
Chicago, Illinois 60603                       One of Its Attorneys
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

18
14839146v.10
Case 2:12-cv-01173-PJG   Filed 11/16/12   Page 18 of 18   Document 1